**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STEVEN M. GREENBAUM,** *et al.*, | |
| *Plaintiffs,* | |
| v. | **Case No. 1:02-cv-2148-RCL** |
| | ***FILED UNDER SEAL**** |
| **ISLAMIC REPUBLIC OF IRAN,** *et al.*, | |
| *Defendants.* | |
| **CARLOS ACOSTA,** *et al.*, | |
| *Plaintiffs,* | |
| v. | **Case No. 1:06-cv-0745-RCL** |
| | ***FILED UNDER SEAL**** |
| **ISLAMIC REPUBLIC OF IRAN,** *et al.*, | |
| *Defendants.* | |
| **HARRY BEER,** *et al.*, | |
| *Plaintiffs,* | |
| v. | **Case No. 1:06-cv-0473-RCL** |
| | ***FILED UNDER SEAL**** |
| **ISLAMIC REPUBLIC OF IRAN,** *et al.*, | |
| *Defendants.* | |
| **JASON KIRSCHENBAUM,** *et al.*, | |
| *Plaintiffs,* | |
| v. | **Case No. 1:03-cv-1708-RCL** |
| | ***FILED UNDER SEAL**** |
| **ISLAMIC REPUBLIC OF IRAN,** *et al.*, | |
| *Defendants.* | |

## MEMORANDUM OPINION

Plaintiffs in this consolidated action hold default judgments against the Islamic Republic of Iran ("Iran") under the Foreign Sovereign Immunities Act ("FSIA") for injuries suffered in terrorist attacks.[1]  These judgments total nearly $100 million in compensatory damages and $900 million in punitive damages.  Lest these judgments become "Pyrrhic [v]ictories," *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 55 (D.D.C. 2009), plaintiffs have diligently fought to enforce their judgments and receive their compensation.  Millions of dollars remain unsatisfied to this day.

This case results from plaintiffs' efforts to attach and execute on Iranian assets to satisfy their judgments.  The prize here?  Millions of dollars' worth of light crude oil purportedly belonging to Iran.  Plaintiffs sought writs of attachment and execution (the "Writs") against this cargo, which the Court originally granted.  ECF Nos. 58 & 59.  The United States then intervened and moved to quash the Writs.  Mot. to Quash Writs, ECF No. 68.  Plaintiffs responded, ECF No. 74, and the United States replied, ECF No. 75.  Upon consideration of the parties' filings and the applicable law in this case, the Court will **GRANT** the United States' motion to quash the Writs.  The United States holds the property at issue, and plaintiffs have not identified a waiver of federal sovereign immunity.

## I.    BACKGROUND

In November 2020, the owners of the M/T Achilleas, an oil tanker traveling off the coast of Oman, approached the United States about a suspicious shipment of light crude oil (the "Cargo")

---

[1] Three cases involve suicide bombings perpetrated by Hamas.  *See* Findings of Fact and Conclusions of Law 1, *Beer v. Islamic Republic of Iran*, No. 1:06-cv-473 (RCL) (D.D.C. Aug. 26, 2008), ECF No. 28; Findings of Fact and Conclusions of Law 1, No. 1:03-cv-1708 (RCL) (D.D.C. Aug. 26, 2008), ECF No. 30; Findings of Fact 1, *Greenbaum v. Islamic Republic of Iran*, No. 1:02-cv-2148 (RCL) (D.D.C. Aug. 31, 2006), ECF No. 30.  The remaining case stems from a terrorist shooting in New York City.  Findings of Fact and Conclusions of Law 1, *Acosta v. Islamic Republic of Iran*, No. 1:06-cv-745 (RCL) (D.D.C. Aug. 26, 2008), ECF No. 33.

they had received.  *See* Framework Agr., ECF No. 69-2 at 2.  The M/T Achilleas's owners and the United States believed that the Cargo originally belonged to the Iranian Revolutionary Guard Corps ("IRGC") and its subsidiary, the Qods Force.  *See* Aff. in Supp. of Seizure Warrant, ECF No. 69-1 at 6; Framework Agr., ECF No. 69-2 at 2.  The United States soon applied for—and received—a seizure warrant for the Cargo.  *See* ECF No. 69-1 at 2–3.  At the same time, the United States requested—and received—a license from the Office of Foreign Assets Control ("OFAC") to engage in transactions necessary to transport and market the Cargo.  *See* ECF Nos. 69-3 & 69-4.[2]  The M/T Achilleas's owners then acknowledged the United States' rightful ownership of the Cargo and agreed to transport the Cargo to the United States.  *See* ECF No. 69-2 at 3–4.

As the M/T Achilleas traveled to the coast of Texas, the parties in this litigation began a tenuous two-step.  On February 3, 2021, the United States obtained an *in rem* arrest warrant for the Cargo.  Arrest Warrant, *United States v. All Petroleum-Product Cargo Aboard the Achilleas With International Maritime Org. No. 9398072*, No. 21-cv-305 (PLF) (D.D.C. Feb. 3, 2021), ECF No. 2.  But plaintiffs soon caught wind of the M/T Achilleas and its bounty.  On February 18, 2021, plaintiffs moved this Court for writs of attachment and execution against the Cargo.  Pls.' Mot. for Writs, ECF No. 58.  The Court granted plaintiffs' motion for the Writs that same day.  Order, ECF No. 59.  The parties agreed to delay serving the Writs until after the United States had sold the entirety of the Cargo.  Decl. of Brian P. Hudak ¶ 9, ECF No. 69-6.  The United States completed this interlocutory sale, and plaintiffs served the Writs, both on March 16, 2021.  *Id.*

---

[2] OFAC later amended this license on June 25, 2021.  *See* License Amendment, ECF No. 75-1.  This amendment "supplement[ed] the listing of regulations and Executive Orders it covers" and extended the license's termination date until January 31, 2022.  United States' Reply 20–21 n.8, ECF No. 75.  Because the Court lacks jurisdiction to issue the Writs, this amendment carries no weight in its analysis.

¶ 10. According to the United States, the proceeds of this sale (the "Proceeds") are held in an "interest-bearing account of the United States." ECF No. 68 at 12.

With the Court's permission, the United States intervened in this consolidated action to challenge the Writs. Order, ECF No. 65. The United States filed a motion to quash the Writs shortly thereafter. ECF No. 68. Plaintiffs responded, ECF No. 74, and the United States replied, ECF No. 75.[3] This motion is ripe for review.

## II.    LEGAL STANDARD

The Court will construe the United States' motion as a motion for reconsideration under Rule 54(b). *See* ECF No. 68 at 14 n.5; *accord Levin v. Islamic Republic of Iran*, 523 F. Supp. 3d 14, 19 (D.D.C. 2021), *appeal docketed*, No. 21-7041 (D.C. Cir. Apr. 30, 2021). A court may reconsider its interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see Cobell v. Jewell*, 802 F.3d 12, 19 (D.C. Cir. 2015). Under this rule, a court may reconsider its prior orders "as justice requires," *Capitol Sprinkler Inspection, Inc. v. Guest Servs. Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir. 1985), which may include the existence of new arguments or information that "might reasonably be expected to alter the conclusion reached by the court." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539–40 (D.D.C. 2005) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

---

[3] Plaintiffs also moved for leave to file a sur-reply. ECF No. 76. The decision to grant or deny leave to file a sur-reply "is 'committed to the sound discretion of the Court.'" *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 85 (D.D.C. 2014) (quoting *Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014)). "A district court should consider 'whether the movant's reply in fact raises arguments or issues for the first time, whether the non-movant's proposed surreply would be helpful to the resolution of the pending motion, and whether the movant would be unduly prejudiced were leave to be granted.'" *Id.* (quoting *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012)). Plaintiffs' proposed sur-reply addresses the United States' amended OFAC license and whether the Cargo is a "blocked asset" under the Terrorism Risk Insurance Act. *See* ECF No. 76-1 at 3–4. But, for the reasons discussed below, federal sovereign immunity precludes the Court's subject-matter jurisdiction over this dispute. Since these arguments would not assist with resolving the present motion, the Court will **DENY** plaintiffs' motion for leave to file a sur-reply.

The Court granted plaintiffs' writs of attachment and execution on an expedited basis, without the opportunity to apprise itself of the Government's views. *See* Order, ECF No. 59. Justice requires the Court to evaluate these newly available arguments and reassess the propriety of the Writs. This approach reflects that of other courts in this district, which "routinely evaluate the validity of writs of attachment *de novo* when faced with motions to quash." *Levin*, 523 F. Supp. 3d at 19–20; *see, e.g.*, *Bennett v. Islamic Republic of Iran*, 618 F.3d 19, 21 (D.C. Cir. 2010). The Court therefore reviews the Writs *de novo*.

### III.    DISCUSSION

Plaintiffs have undoubtedly suffered from Iran's support for the terrorist attacks that harmed them. But the United States carries a property interest in these assets seized on the high seas. Plaintiffs, therefore, bear the heavy burden of overcoming federal sovereign immunity, which they contend the United States has waived in § 201(a) of the Terrorism Risk Insurance Act ("TRIA"). The Court will begin—and end—with this "threshold jurisdictional question." *Weinstein v. Islamic Republic of Iran*, 274 F. Supp. 2d 53, 56 (D.D.C. 2003). Consistent with its prior opinions in *Flatow v. Islamic Republic of Iran*, 74 F. Supp. 2d 18 (D.D.C. 1999), and *Weinstein*, the Court holds that plaintiffs have not cleared this bar. The United States has demonstrated its ownership of the Cargo and Proceeds, thereby triggering federal sovereign immunity. And TRIA § 201(a) does not contain an unequivocal expression of waiver. Federal sovereign immunity precludes this Court's jurisdiction over the Cargo and Proceeds.

First, the Cargo and Proceeds are federal property. Under the applicable civil forfeiture statute, "[a]ll assets, foreign or domestic" of individuals engaged in federal crimes of terrorism are "subject to forfeiture to the United States." 18 U.S.C. § 981(a)(1)(G)(i). Forfeited property "shall be deemed to be in the custody of the Attorney General . . . subject only to the orders and decrees

5

of the court or the official having jurisdiction thereof." *Id.* § 981(c). And "[a]ll right, title, and interest" in forfeited property "shall vest in the United States upon commission of the act giving rise to forfeiture." *Id.* § 981(f). The United States arrested the Cargo under the authority of 18 U.S.C. § 981. *See* Arrest Warrant, *All Petroleum-Product Cargo*, No. 21-cv-305 (PLF) (Feb. 3, 2021), ECF No. 2. Throughout this arrest (and subsequent seizure), the United States carried a property interest in the Cargo. *See* 18 U.S.C. § 981(c), (f). And once the United States sold the Cargo, the resulting Proceeds were placed in an interest-bearing Treasury account. *See* ECF No. 68 at 12–13 (detailing this interlocutory sale). So, the United States carried a property interest in the Cargo when this Court issued the Writs—just as the United States does in the Proceeds now.

Since the United States holds a property interest in the Proceeds, federal sovereign immunity applies. It is "axiomatic that the doctrine of sovereign immunity prevents a judgment creditor from attaching federal property, absent consent by the United States." *Neukirchen v. Wood Cnty. Head Start, Inc.*, 53 F.3d 809, 812 (7th Cir. 1995) (citations omitted). And as this Court has previously explained:

> [A]ssets held within United States Treasury accounts that might otherwise be attributed to Iran are the property of the United States and are therefore exempt from attachment or execution by virtue of the federal government's sovereign immunity.

*In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d at 53; *see also Flatow*, 74 F. Supp. 2d at 21 (collecting cases confirming "that creditors may not attach funds held by the U.S. Treasury"). The United States held a property interest in the Cargo by virtue of § 981(f). The Cargo's sale proceeds are now held in a Treasury account. The Cargo (and Proceeds) are therefore exempt from attachment and execution unless the United States has waived its sovereign immunity.

Plaintiffs, then, bear the burden to "identify an explicit, unequivocal waiver of the United States' sovereign immunity." *Flatow*, 74 F. Supp. 2d at 22. They have failed to do so. A waiver of sovereign immunity must be "'unequivocally expressed' in the statutory text." *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)). "Any ambiguities in the statutory language are to be construed in favor of immunity," so that "the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (citing *United States v. Williams*, 514 U.S. 527, 531 (1995) and *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86 (1983)). Congress need not use "magic words" when waiving federal sovereign immunity. *Cooper*, 566 U.S. at 291. But "the scope of Congress's waiver" must "be clearly discernable from the statutory text in light of traditional interpretive tools." *Id.* "If not, then [a court] take[s] the interpretation most favorable to the Government." *Id.* These principles "apply with equal force to attachments and garnishments." *Flatow*, 74 F. Supp. 2d at 21 (citations omitted).

Plaintiffs argue that TRIA § 201(a) waives the United States' sovereign immunity. *See* ECF No. 74 at 16. The TRIA states that:

> *[n]otwithstanding any other provision of law*, . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune [under § 1605A or the former § 1605(a)(7)], the blocked assets of that terrorist party . . . shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Terrorism Risk Insurance Act, Pub. L. No. 107-297, § 201(a) (2002) (emphasis added). In plaintiffs' telling, the TRIA's "notwithstanding" clause independently abrogates federal sovereign immunity. ECF No. 74 at 16 (citing *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018)).

But TRIA § 201(a) supersedes only "provision[s] of law." TRIA § 201(a). As the Court has previously explained, this language "is sufficiently imprecise so that it could be construed to refer only to other statutes, and not the common law doctrine of sovereign immunity." *Flatow*, 74 F. Supp. 2d at 24. This narrow interpretation reads "provision" as limited to "[a] clause in a statute, contract, or other legal instrument." *Provision*, Black's Law Dictionary (11th ed. 2019). Federal sovereign immunity is not codified in a statute, regulation, or other legal instrument. *See* 14 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, & Helen Hershkoff, Federal Practice & Procedure § 3654 (4th ed. 2015). Under this reading, the doctrine is not a "provision of law." Since this interpretation "would not authorize money damages against the [United States]," the statute is ambiguous. *Cooper*, 566 U.S. at 290–91. At the least, § 201(a) falls short of the required unequivocal expression of waiver. *See Blue Fox*, 119 S. Ct. at 691.[4] The Court—as it did in *Flatow*—concludes that Congress did not unequivocally express its intent to waive federal sovereign immunity through TRIA § 201(a).

Plaintiffs' reliance on *Rubin v. Islamic Republic of Iran* is misplaced. *See* ECF No. 74 at 16–18. *Rubin* concerned the FSIA, which immunizes the "property in the United States of a foreign state" from attachment and execution subject to exceptions listed in § 1610 and § 1611. 28 U.S.C. § 1609. In *Rubin*, the Supreme Court discussed the scope of one of these exceptions— 28 U.S.C. § 1610(g). Section 1610(g) reads in relevant part as follows:

---

[4] Congress's waiver of federal sovereign immunity in other statutes confirms this conclusion. Compare TRIA § 201(a) to 28 U.S.C. § 1610(g), which states that certain property of a foreign state "shall not be immune from attachment in aid of execution, or execution, upon a judgment entered under [§] 1605A *because the property is regulated by the United States Government*" under other statutes. 28 U.S.C. § 1610(g)(2) (emphasis added). Or take the language in the Federal Tort Claims Act ("FTCA"), which affirmatively grants federal district courts "exclusive jurisdiction of civil actions on claims against the United States[] for money damages." 28 U.S.C. § 1346(b); *see FDIC v. Meyer*, 510 U.S. 471, 475–76 (1994) (noting that § 1346(b) "waive[s] the sovereign immunity of the United States"). Those statutes' specific references to the United States' sovereign immunity differ from TRIA § 201(a)'s blanket reference to "provision[s] of law." *See* TRIA § 201(a).

(1) IN GENERAL.—Subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment *as provided in this section*, regardless of—

> (A) the level of economic control over the property by the government of the foreign state;
>
> (B) whether the profits of the property go to that government;
>
> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
>
> (D) whether that government is the sole beneficiary in interest of the property; or
>
> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. § 1610(g)(1) (emphasis added). *Rubin* concerned whether § 1610(g)(1) "provide[d] an independent exception to immunity" permitting a § 1605A judgment holder "to attach and execute against *any* property of [a] foreign state, regardless of whether that property is deprived of immunity elsewhere in § 1610." *Rubin*, 138 S. Ct. at 823.

The Supreme Court answered "no." Under a plain-text reading of § 1610(g)(1), the Supreme Court reasoned that "this section" referred to § 1610 "as a whole," meaning that § 1610(g)(1) "govern[ed] the attachment and execution of property that is exempted" from immunity "elsewhere in § 1610." *Id.* To support this conclusion, the Supreme Court noted that:

> two other provisions within § 1610 specifically allow § 1605A judgment holders to attach and execute against property of a foreign state, "[n]otwithstanding any other provision of law," including those provisions otherwise granting immunity, but only with respect to assets associated with certain regulated and prohibited financial transactions. . . .

9

> Section 1610(g) conspicuously lacks the textual markers, "shall not be immune" or "notwithstanding any other provision of law," that would have shown that it serves as an independent avenue for abrogation of immunity.

*Rubin*, 138 S. Ct. at 824.  Plaintiffs would have the Court interpret this passage to say "that 'provision of law' *does* encompass sovereign immunity."  ECF No. 74 at 17.  But plaintiffs' reading ignores the context of *Rubin*.  The Supreme Court's use of "immunity" referred to § 1609's immunization of foreign property from attachment and execution.  Its analysis said nothing about federal sovereign immunity.  Nor did the Supreme Court's analysis speak to the impact of a "notwithstanding" clause on common law doctrines.  *Rubin* discussed the FSIA, which contains statutes—i.e., "provision[s] of law"—granting immunity to foreign sovereigns and foreign property.  *See, e.g.*, 28 U.S.C. §§ 1604, 1609.  The Supreme Court had no occasion in *Rubin* to discuss matters of federal sovereign immunity.[5]

In short, the TRIA does not waive federal sovereign immunity.  TRIA § 201(a) applies "[n]otwithstanding any other provision of law."  TRIA § 201(a).  Federal sovereign immunity is a common law doctrine, and the Court could interpret "provision of law" to refer "only to other statutes."  *Flatow*, 74 F. Supp. 2d at 24.  This "notwithstanding" clause falls far short of the Supreme Court's mandate that a waiver of federal sovereign immunity must be "unequivocally expressed in the statutory text."  *Blue Fox*, 119 S. Ct. at 691.  The Court therefore lacked subject matter jurisdiction to issue the Writs.

## IV.    CONCLUSION

The Court appreciates plaintiffs' persistent efforts to satisfy their judgments.  But a federal court may not overstep the bounds of its limited jurisdiction despite its "own individual

---

[5] Moreover, the assets in *Rubin* were held by the University of Chicago, not the federal government. *Rubin*, 138 S. Ct. at 821.

conception[] of what is fair or just." *Flatow*, 74 F. Supp. 2d at 26. For the foregoing reasons, the

Court will **GRANT** the United States' motion to quash plaintiffs' writs of attachment and

execution. A separate order consistent with this Memorandum Opinion shall issue this date.


Date: ~~February~~ March 1, 2022

Royce C. Lamberth
United States District Judge

11